UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| GOLDMINE WORLD, INC. d/b/a World Bankcard Services, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 1:23cv768 (CMH/WEF) ) |
| PHOENIX BEAUTY LLC d/b/a Belle Nails & Day Spa *et al.*, | ) ) ) |
| Defendants. | ) ) ) |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Goldmine World, Inc. d/b/a World Bankcard Services' ("Plaintiff or "WBS") Motion for Default Judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 55(b)(2). (Dkt. 18). WBS seeks entry of default judgment against Defendant Phoenix Beauty LLC d/b/a Belle Nails & Day Spa ("Phoenix"), Defendant Jane T. Nguyen ("Nguyen"), and Defendant My Kim Thi Pham ("Pham") (collectively, the "Defendants"). The Complaint lists a fourth Defendant, Zain Khalifa ("Khalifa"). WBS has failed to effect service of process upon Khalifa and is therefore not seeking default judgment against Khalifa. Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the Court these proposed findings of fact and recommendations, a copy of which will be provided to all interested parties. For the reasons set forth below, the undersigned recommends that WBS' Motion for Default Judgment against Defendant Phoenix be granted-in-part and denied-in-part, against Defendant Nguyen be granted-in-part and denied-in-part, and against Defendant Pham be denied

in its entirety.[1]  The undersigned further recommends that WBS be given seven (7) days to show cause why the Complaint should not be dismissed as to Defendant Khalifa pursuant to Fed. R. Civ. P. 4(m) for failing to effect service of process within 90 days after filing the Complaint.

### Factual Background and Procedural History

By way of background, WBS is a company located in Fairfax County, Virginia that contracts with merchants to process payments, including credit card payments, made to merchants by customers.  WBS acts as an intermediary between its client businesses and the banks that issue the credit cards used by the customers to purchase the businesses' goods or services.  Phoenix held itself out as a nail and day spa and contracted with WBS to process payments it received from its customers.  Nguyen is the sole owner of Phoenix and entered into the contract with WBS on behalf of Phoenix.  Pham oversaw "the operations and management of Phoenix."  Khalifa "was involved in making various" financial transactions on behalf of Phoenix.

The dispute between WBS and Phoenix is centered on WBS' claim that Phoenix engaged in a fraudulent chargeback scheme that resulted in a loss to WBS of $99,296.00.  With respect to this case, a chargeback is a refund to a customer who has disputed a credit card transaction processed by WBS.  Here, for the chargebacks at issue, the issuing banks refunded the purchase, credited the cardholder's account, and obtained reimbursement from WBS.  In turn, WBS sought

---

[1]      Relevant filings before the Court include the Complaint (Dkt. 1) ("Compl."); Plaintiff's Request for Entry of Default (Dkt. 16); Affidavit of Dylan M. Phillips in Support of Request for Entry of Default as to Phoenix Beauty LLC (Dkt. 16-1); Affidavit of Dylan M. Phillips in Support of Request for Entry of Default as to Jane T. Nguyen (Dkt. 16-2); Affidavit of Dylan M. Phillips in Support of Request for Entry of Default as to My Kim Thi Pham (Dkt. 16-3); Clerk's Entry of Default (Dkt. 17); Plaintiff's Motion for Default Judgment as to Defendants (Dkt. 18) ("Mot. Default J."); Affidavit of Eunjin Nam in Support of Motion for Default Judgment (Dkt. 18-1) ("Nam Affidavit"); Supplemental Memorandum in Support of Motion for Default Judgment (Dkt. 22) ("Supplemental Mem. Supp."); and all attachments and exhibits submitted with those filings.

reimbursement from Phoenix, but neither Phoenix nor any of the individual Defendants repaid WBS resulting in a financial loss to WBS.  WBS alleges that Phoenix had a contractual duty to maintain a merchant account with sufficient funds to repay WBS for expenses it incurred related to chargebacks.  WBS also alleges that the individual Defendants used Phoenix to swindle WBS through a fraudulent chargeback scheme.[2]  On June 13, 2023, WBS filed this lawsuit against the Defendants alleging breach of contract, unjust enrichment, fraud,[3] and conspiracy.[4]  (Dkt. 1, Compl.).[5]

On June 26, 2023 and June 28, 2023, WBS filed with the Clerk of Court executed summons, which stated that Defendants Phoenix, Nguyen, and Pham were served the Summons and Complaint on June 21, 2023.  (Dkts. 5-7).  Defendant Khalifa was never served with the Summons and Complaint.  Phoenix, Nguyen, and Pham were required to answer or otherwise respond to the Complaint by July 12, 2023.  (*Id.*)  A review of the record reveals that none of the Defendants filed an answer or otherwise responded to the Complaint by July 12, 2023, or anytime thereafter.

On July 18, 2023, WBS filed five affidavits from WBS' counsel, Dylan M. Phillips, in

---

[2]    The factual background is summarized by the undersigned based on a review of all relevant filings before the Court.

[3]    WBS alleges that the Defendants' actions constitute common law fraud, fraud under 18 U.S.C. § 1341, 18 U.S.C. § 1343, 18 U.S.C. § 1344, fraud by false pretenses under Va. Code Ann. § 18.2-178, and fraud under Va. Code Ann. § 18.2-152.7:2.

[4]    WBS alleges that the Defendants' actions constitute common law conspiracy, conspiracy under 18 U.S.C. § 1349, and conspiracy under Va. Code Ann. § 18.2-500.

[5]    WBS alleges a breach of contract claim against Defendants Phoenix and Nguyen (Count I), unjust enrichment claims against all Defendants (Count II), fraud claims against all Defendants (Count III), and conspiracy claims against all Defendants (Count IV).

support of default as to Defendants Phoenix, Nguyen, and Pham.  (Dkts. 8, 9, 11, 12, 13).[6]  On the same day, WBS' counsel also filed an affidavit of attorneys' fees with an exhibit setting forth the relevant time entries and description of services.  (Dkt. 14).  On July 26, 2023, WBS requested entry of default as to the Defendants and attached three affidavits in support of default as to each Defendant.[7]  (Dkt. 16).  The Clerk entered default as to Defendants Phoenix, Nguyen, and Pham on July 27, 2023.  (Dkt. 17).  On August 7, 2023, WBS filed its Motion for Default Judgment as to Defendants Phoenix, Nguyen, and Pham, and attached the affidavit of Eunjun Nam, who is the Manager of the Processing Department at WBS.  (Dkt. 18).  WBS did not file a separate memorandum in support of its motion but noticed the motion for a hearing before the undersigned on September 1, 2023.  (Dkt. 19).  On September 1, 2023, counsel for WBS appeared and presented argument in support of its Motion for Default Judgment, and no one appeared on behalf of any of the Defendants.  (Dkt. 20).  During the hearing, the undersigned raised two issues with WBS' counsel.  First, WBS cited criminal statutes in support of its civil fraud claim.  Second, after a review of the Complaint and attached contract, the undersigned could not identify any explicit contractual obligation on behalf of the Defendants to establish and sufficiently fund a merchant account that WBS could then access to obtain reimbursement for chargebacks.  This allegation is the basis of WBS' breach of contract claims but this requirement does not actually appear in the contract.  (*Id.*)  The undersigned permitted WBS to file a supplemental brief to address these two issues.  (Dkt. 21).  On September 7, 2023, WBS filed its supplemental brief and, as discussed

---

[6]     The affidavit of Dylan M. Phillips in support of default as to Phoenix Beauty LLC was filed twice on the docket.  (Dkts. 8, 11).  The affidavit of Dylan M. Phillips in support of default as to Jane T. Nguyen was also filed twice on the docket.  (Dkts. 9, 12).

[7]     The three affidavits attached to the request for default are identical to the affidavits previously filed on the docket.

below, failed to satisfactorily address the undersigned's concerns.  (Dkt. 22).

Finding the properly plead allegations in the Complaint to be uncontested, the undersigned took the matter under advisement to issue this Report and Recommendation.

### Facts Alleged in the Complaint and Deemed Admitted

Fed. R. Civ. P. 55 provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Based on the failure of the Defendants to file an answer or other responsive pleading in a timely manner, the Clerk entered default as to the Defendants.  (Dkt. 17).  A defendant in default admits the factual allegations in the complaint.  *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (stating that when a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)).

In this case, the undersigned recommends that the Court find the following well-pleaded facts to be established by the Complaint and deemed admitted.  WBS is a Virginia stock corporation with its principal place of business located at 10855 Fairfax Boulevard, Fairfax, Virginia 22030.  (Compl. ¶ 1).  WBS is a payment processing provider.  (*Id*. ¶ 10).  Defendant Phoenix is a District of Columbia limited liability company with its principal place of business located at 312 Massachusetts Avenue, NE, Washington, DC 20002.  (*Id*. ¶ 2).  Phoenix became a registered entity in the District of Columbia on March 24, 2022 and solicits clients from the District of Columbia, Maryland, and Virginia.  (*Id*. ¶ 11).  Defendant Nguyen is an individual residing at 1229 Lawler Drive, Frederick, Maryland 21702, and is the sole owner of Phoenix.  (*Id*. ¶ 3).

Defendant Pham is an individual residing at 1229 Lawler Drive, Frederick, Maryland 21702, who oversaw the operations and management of Phoenix.  (*Id*. ¶ 4).

On May 16, 2022, WBS and Phoenix entered into a contract hereinafter referred to as the "Merchant Processing Agreement" whereby WBS agreed to process payments, including credit card transactions, made to Phoenix.   (*Id*. ¶ 14; Exh. 1, Merchant Processing Agreement).  The Merchant Processing Agreement is the only contract attached to the Complaint as an exhibit. (*Id*. ¶ 16).  In the Merchant Processing Agreement, Defendant Nguyen personally guaranteed the full payment of Phoenix's obligations to WBS that arose under the contract.  (*Id*. ¶ 15; Exh. 1, Merchant Processing Agreement).  WBS provided Phoenix with payment processing services from May 16, 2022 to June 6, 2023.  (*Id*. ¶ 17; Exh. 1, Merchant Processing Agreement).

As it relates to a credit card transaction, a chargeback occurs when a cardholder disputes a charge on their bank statement with the issuing bank.  (*Id*. ¶ 19).  When a chargeback occurs, the issuing bank will refund the amount of the purchase to the cardholder and then be repaid by WBS.  (*Id*. ¶ 20).  WBS would then seek reimbursement from Phoenix.  *(Id*. ¶ 21).  From April 29, 2023 to May 4, 2023, WBS paid the issuing banks for five chargebacks totaling $99,296.00. (Compl. ¶¶ 47, 51).  With respect to three of these chargebacks, WBS initially suspended the transactions in order to investigate their legitimacy. (*Id*. ¶¶ 28, 29). During the investigation Nguyen and Pham represented to WBS that they sold Phoenix's used furniture and processed the payments through the credit card terminal. (*Id*. ¶ 30).  The Defendants provided WBS with documentation of the sale and an authorization form, which WBS relied upon to approve the transactions.  (*Id*. ¶¶ 31, 32).  Neither Phoenix nor Nguyen ever repaid WBS.  (Compl. ¶ 52).

From May 4, 2023 to May 16, 2023, there were an additional ten attempted chargebacks seeking a total of $71,082.67, but these chargebacks were not honored and as a result WBS

6

suffered no financial loss.  (*Id*. ¶ 41).  On May 18, 2023, WBS sent notice to the Defendants demanding they cease further misuse of WBS' payment processing services and requesting they keep sufficient funds in their merchant account to cover future chargebacks.  (*Id*. ¶ 42).  On June 5, 2023, an individual who identified himself only as "Tony,[] the manager" of Phoenix, contacted WBS and stated there would not be any additional chargebacks and if there were that he and the other individual Defendants would repay WBS.  (*Id*. ¶ 44).  WBS continued to learn about additional attempted chargebacks and on June 6, 2023 WBS terminated its contractual relationship with Phoenix and Nguyen.  (*Id*. ¶¶ 45, 46).

### Allegations in the Complaint Not Deemed Admitted

In the Complaint, WBS asserts a fraud claim by merely stating a legal conclusion that is insufficiently supported by factual allegations.  WBS also advances a breach of contract theory wholly unsupported by the express terms of the contract.  A defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded."  *Martinez Garcia v. Mega Auto Outlet*, No. 1:20-CV-945 (LO/TCB), 2021 WL 1015816, at *4 (E.D. Va. Feb. 23, 2021), *report and recommendation adopted*, No. 1:20-CV-0945, 2021 WL 982630 (E.D. Va. Mar. 16, 2021) (quoting *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (internal quotation marks and citations omitted).  Default does not [. . .] constitute an admission of the adversary's conclusions of law and is not to be treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."  *Johnson Controls Sec. Sols., LLC v. Orion Mgmt*., LLC, No. 1:22-CV-1238 (AJT/IDD), 2023 WL 5199539, at *2 (E.D. Va. July 25, 2023), *report and recommendation adopted*, No. 1:22-CV-1238 (AJT/IDD), 2023 WL 5183035 (E.D. Va. Aug. 11, 2023) (internal quotation marks and citation omitted).  Rather, the Court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint

support the relief sought in [the] action." *See Ryan*, 253 F.3d at 780.

First, WBS alleges the chargebacks are the product of a premeditated scheme orchestrated by the Defendants to defraud WBS. (*Id.* ¶¶ 12, 18, 23, 26-27, 33-37, 53, 72, 81-89, 91-94). Whether the Defendants engaged in fraud is a conclusion of law that in order to be properly plead must be supported by factual allegations. Here, WBS fails to allege facts that reasonably support its proposed legal conclusion that the Defendants engaged in fraudulent conduct, and therefore, the undersigned recommends the Court not find paragraphs 12, 18, 23, 26-27, 33-37, 53, 72, 81-89, 91-94 of the Complaint to be admitted for purposes of this Motion.[8]

Second, WBS' breach of contract claim is based on the theory that Phoenix and Nguyen were contractually obligated to maintain a merchant account with sufficient funds from which WBS could recover any loss it suffered related to chargebacks. (*Id.* ¶¶ 55, 58).   To support this claim, WBS cites to the Merchant Processing Agreement attached to the Complaint as Exhibit 1. A review of the Merchant Processing Agreement reveals no such contractual obligation. Therefore, the undersigned recommends the Court not find paragraphs 55 and 58 of the Complaint to be admitted for purposes of this Motion.[9]

### Jurisdiction and Venue

The Court must have both subject matter jurisdiction and personal jurisdiction over the Defendants, and venue in this judicial district must be proper before the Court can render a default judgment.

---

[8]   The undersigned addresses why Plaintiff's allegations of fraud fail to state a claim under Fed. R. Civ. P. 12(b)(6) in the analysis section.

[9]   The undersigned addresses why Plaintiff's allegations of breach of contract fail to state a claim under Fed. R. Civ. P. 12(b)(6) in the analysis section.

***Subject Matter Jurisdiction***

WBS asserts two grounds upon which this Court can exercise subject matter jurisdiction over this case.  First, WBS claims this action raises a federal question pursuant to 28 U.S.C. § 1331. (Compl. ¶ 6).  Second, WBS asserts there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, as required by 28 U.S.C. § 1332.  (*Id.* ¶ 7).

*Federal Question Jurisdiction*

WBS claims that federal question jurisdiction exists because the Defendants engaged in fraud and conspiracy to commit fraud in violation of 18 U.S.C. § 1341, *et seq.*  (Compl. ¶ 6). However, the statutes cited by WBS are exclusively criminal in nature and do not extend federal question jurisdiction to a private civil cause of action.  *See Johnson v. Bank of Am. Corp.*, No. 4:22-2975-JD-KDW, 2022 U.S. Dist. LEXIS 240681, *4 (E.D. Va. Sept. 14, 2022) ("Plaintiff's citation of federal criminal statues does not invoke this court's federal question jurisdiction under 28 U.S.C. § 1331 as there is no private cause of action under these statutes.") (citing *Tribble v. Reedy*, 888 F.2d 1387, *1 (4th Cir. 1989) (holding that § 1343 is a "bare criminal statute" and provides no basis for a private right of action); *Hilgeford v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 3:08CV669, 2009 WL 302161, at *4 (E.D. Va. Feb. 6, 2009) ("[T]he bank fraud statute, 18 U.S.C. § 1344, [does not] provide[ ] Plaintiff a stand-alone civil cause of action."); *Williams v. McKinney*, C/A No.: 6:06-3465-HFF-WMC, 2008 WL 731124, at *4 (D.S.C. Mar. 18, 2008) ("[N]either 18 U.S.C. § 1343 (relating to wire fraud), [and] 18 U.S.C. § 1344 (relating to bank fraud) . . . provide for a private right of action.").  Therefore, the undersigned recommends the Court find that subject matter jurisdiction has not been established pursuant to 28 U.S.C. § 1331.

*Diversity Jurisdiction*

WBS has, on the other hand, properly established subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.  (*Id*. ¶ 7).  A federal district court has subject-matter jurisdiction when a dispute involves "citizens of different States" and the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a)(1).

WBS is a Virginia stock corporation with a principal place of business in Fairfax, Virginia. (Compl. ¶ 1).  Defendant Phoenix is a District of Columbia limited liability company with a principal place of business in Washington D.C.  (*Id*. ¶ 2).  For purposes of subject-matter jurisdiction, a limited liability company holds the same citizenship as all its members, and a corporation's citizenship is the state of its incorporation and the state in which its principal place of business is located.  *See Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011); *Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 289 (4th Cir. 1999). Defendant Nguyen is the sole owner of Phoenix.  (*Id*. ¶ 3).  Defendant Nguyen and Defendant Pham are both individuals residing in Frederick, Maryland.  (*Id*. ¶¶ 3-4).  For purposes of diversity jurisdiction, the Defendants are citizens of the District of Columbia and Maryland, and WBS is a citizen of the Commonwealth of Virginia.  Accordingly, there is complete diversity between the parties.

Furthermore, the Complaint seeks damages, including $99,296.00 in compensatory damages, that exceed the required minimum amount in controversy.  (Compl., Prayer for Relief; Supplemental Mem. Supp. at 1).  Given that these allegations are uncontested, the undersigned recommends the Court find it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

***Personal Jurisdiction***

The Court must also have personal jurisdiction over each Defendant.  The standards of federal due process and the forum state's long-arm statute must be satisfied for a federal court to have personal jurisdiction over a party.  *See Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012).  Federal due process permits personal jurisdiction where a defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  The inquiry to find personal jurisdiction requires either specific jurisdiction "based on conduct connected to the suit" or general jurisdiction based on "continuous and systematic" activities in the forum state.  *Tire Eng'g & Distrib.*, 682 F.3d at 301 (quoting *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002)).  Further, "a defendant should be able to anticipate being brought to court in the forum, in that the contacts must be directed at the forum state in more than a random, fortuitous, or attenuated way."  *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002).

Under Virginia's long arm statute, a court may exercise personal jurisdiction over a foreign defendant when the cause of action arises from defendant "[t]ransacting any business in this Commonwealth," "[c]ontracting to supply services or things in this Commonwealth," "[c]ausing tortious injury by an act or omission in this Commonwealth," or "[c]ausing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth."  Va. Code Ann. § 8.01-328.1(A)(1)-(4).  Virginia's long-arm statute provides for personal jurisdiction to the extent that

federal due process permits. *ePlus Tech., Inc.,* 313 F.3d at 176. Thus, "'[b]ecause Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause,' the statutory and constitutional inquiries merge into one inquiry." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 351 (4th Cir. 2020) (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009)). Under that inquiry, the court considers "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.* at 352 (quoting *Consulting Eng'rs Corp.*, 561 F.3d at 278).

*Defendant Phoenix*

The undersigned recommends the Court find that Phoenix purposefully availed itself of this forum when it contracted and transacted business with WBS, a company incorporated under Virginia law and located in Virginia, for its payment processing services. (Compl. ¶¶ 1, 8). Additionally, Phoenix regularly sought business from customers in Virginia, the subject funds at issue were removed from WBS' control in Virginia, and Phoenix caused injury in Virginia to WBS because of its acts and omissions resulting in a financial loss to WBS. (Compl. ¶¶ 8, 11; Supplemental Mem. Supp. at 1). For these reasons, the undersigned further finds that the exercise of personal jurisdiction is constitutionally reasonable—as Phoenix voluntarily established a contractual relationship with WBS—and would not offend "traditional notions of fair play and substantial justice." *See Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463).

*Defendants Nguyen and Pham*

As to Defendant Nguyen and Defendant Pham, both of whom are residents of Maryland, the Fourth Circuit has explained that in "the typical case, the contacts of a company are not

attributed to a corporate agent for jurisdictional purposes," but that corporate officers are subject to personal jurisdiction if they have "sufficient contacts with Virginia, even if those contacts [are] made ostensibly on behalf of" their corporation.  *ePlus*, 313 F.3d at 177.

Here, Nguyen is the sole owner of Phoenix, and is listed on the Merchant Processing Agreement, the contract at issue in this matter, as the owner and a person "who otherwise has significant responsibility to control, manage, or direct [the] business."  (Compl. ¶ 3; Exh. 1, Merchant Processing Agreement).  Nguyen signed the Merchant Processing Agreement, both individually and on behalf of Phoenix, and personally guaranteed the full payment and performance of Phoenix's obligations to WBS arising under the contract.  (Comp. ¶ 15; Exh. 1). For purposes of personal jurisdiction, Phoenix and Nguyen are essentially interchangeable.  Pham oversaw the operations and management of Phoenix and WBS sufficiently alleges that she played an active role in the chargebacks at issue.  (Compl. ¶¶ 30-35, 37, 49, 50, 51).  In sum, the record clearly establishes that Phoenix operated through the actions of a few individuals, two of whom were Nguyen and Pham.

Based on factual allegations in the Complaint, Nguyen had direct personal involvement in the claims at issue and purposely availed herself of this forum when she contracted and transacted business with WBS, a Virginia stock corporation.  (*Id*. ¶¶ 8, 15, 30, 31).  Similarly, the undersigned recommends the Court find that Pham had direct personal involvement in the claims at issue and therefore purposely availed herself of this forum.  *See ePlus*, 313 F.3d at 177 (citing *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990) ("[A] single act by a nonresident which amounts to transacting business in Virginia and gives rise to a cause of action may be sufficient to confer jurisdiction upon [Virginia] courts.")).  Furthermore, the exercise of jurisdiction over Nguyen and Pham does nothing to "offend traditional notions of fair play and substantial justice" and there is

nothing unreasonable about subjecting them to jurisdiction in Virginia. *See ePlus*, 313 F.3d at 177 (citing *Int'l Shoe Co*., 326 U.S. at 316). Both Nguyen and Pham should have reasonably assumed, based on their contacts with Virginia, that they could be sued here and compelled to defend a suit in this forum. Therefore, the Defendants maintained sufficient contacts with Virginia based on conduct connected to this case for personal jurisdiction to be proper in Virginia courts. As such, the undersigned recommends the Court find that it has personal jurisdiction over the Defendants under the specific jurisdiction inquiry.

*Venue*

Venue in a court is proper when the action is brought in a judicial district in which a substantial part of the events or omissions giving rise to the action occurred. *See* 28 U.S.C. § 1391(b). Again, WBS is a Virginia corporation that operates from a location in Fairfax, Virginia, within the Eastern District of Virginia. (Compl. ¶¶ 1, 9). The undersigned recommends the Court find venue in this district to be proper because a substantial part of the conduct which resulted in WBS paying the costs of the chargebacks initiated by Phoenix or its customers occurred in this judicial district. (*Id*. ¶¶ 61-69); *see Precision Franchising LLC v. Dist. Heights CCS LLC*, No. 1:18CV582 (LMB/TCB), 2018 WL 5304132, at *2 (E.D. Va. Aug. 29, 2018), *report and recommendation adopted*, No. 1:18CV582 (LMB/TCB), 2018 WL 4599667 (E.D. Va. Sept. 25, 2018) (finding that venue was proper, in part, because Defendants' acts and omissions related to the contract at issue resulted in harm to the plaintiff in this Court's judicial district). Therefore, the undersigned recommends the Court find venue to be proper in this district pursuant to 28 U.S.C. § 1391(b).

### Service of Process

Pursuant to Fed. R. Civ. P. 4(h), a corporation, partnership, or other unincorporated

association may be served in a judicial district of the United States (1) in the manner prescribed in Rule 4(e)(1) for serving an individual, or (2) by delivering a copy of the summons and complaint to an officer, manager, or general agent, or any other agent authorized by law to receive service of process.  Pursuant to Fed. R. Civ. P. 4(e)(2), an individual may be served in a judicial district of the United States by delivering a copy of the summons and complaint to the individual personally, by leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, or by delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

On June 21, 2023, WBS served Olga Kasyan, who is a paralegal of Defendant Phoenix's registered agent, Registered Agent Inc., and who is designated by law to accept service on behalf of Phoenix.  (Dkt 5; Dkt. 16-1).  On June 21, 2023, WBS served Defendant Pham personally at her residence located at 1229 Lawler Dr., Frederick, Maryland.  (Dkt. 6; Dkt. 16-3).  That same day, WBS also served Defendant Nguyen by serving Nguyen's daughter, Defendant Pham, at the same address, 1229 Lawler Dr., Frederick, Maryland.  (Dkt. 7; Dkt. 16-2).  Nguyen's daughter, Defendant Pham, was at the time of service twenty-seven (27) years old and resided at 1229 Lawler Dr., Frederick, Maryland with Nguyen.  (*Id*.)  Based on the foregoing, the undersigned recommends the Court find that the Defendants were properly served in accordance with Fed. R. Civ. P. 4(h) and 4(e)(2).

### Fed. R. Civ. P. 12(b)(6) Analysis of WBS' Claims

Before entering default judgment, the Court must evaluate the complaint against the standards of Fed. R. Civ. P. 12(b)(6) to ensure that the complaint properly states a claim. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).

#### A.      Breach of Contract Against Defendants Phoenix and Nguyen (Count I)

WBS alleges a breach of contract claim based on Phoenix's and Nguyen's failure to perform its obligations under the Merchant Processing Agreement.  WBS claims that the Merchant Processing Agreement required Phoenix to pay for all chargebacks and to maintain a merchant account with sufficient funds that would cover any chargebacks.  (Compl. ¶ 55).  WBS also claims that Nguyen personally guaranteed to indemnify WBS for any amounts due under the Merchant Processing Agreement.  (Compl. ¶ 56).  WBS asserts that it fulfilled its duties under the Merchant Processing Agreement by providing the requested payment processing services, but Phoenix and Nguyen failed to honor their responsibilities to pay for the chargebacks and to maintain the merchant account.  (*Id*. ¶¶ 57-58).  As a result, WBS was forced to pay the banks $99,296.00, which is the amount WBS is seeking in actual damages from Phoenix and Nguyen.  (*Id*. ¶ 59).  For the reasons set forth below, the undersigned recommends the Court find there is no such contractual obligation under the express terms of the Merchant Processing Agreement, and therefore, WBS' Motion for Default Judgment should be denied as to its breach of contract claim.

*Choice of Law Analysis*

Although not addressed by WBS, the Court first must consider the choice of law applicable to this case.  Federal courts sitting in diversity must apply the law of the forum state, including its choice of law principles.  *Chesapeake Supply and Equipment Co. v. J.I. Case Co*., 700 F. Supp. 1415, 1416 (E.D. Va. 1988) (citing *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)).  Thus, Virginia choice of law principles govern here.  "In Virginia, questions of breach are determined by the law of the place of performance, but the validity, interpretation, and construction of a contract are governed by the substantive law of the place of contracting, that is, where the final act is done which is necessary to make [the contract]

binding." *Id.* at 1417-18 (internal quotation marks omitted).  However, for questions of validity, interpretation, and construction of a contract, if the contract is to be performed in a different state where the contract is made, then the law of the place where the contract is to be performed governs. *See Poole v. Perkins*, 126 Va. 331, 335 101 S.E. 240, 241 (1919); *Crosson v. Conlee*, 745 F.2d 896, 902 (4th Cir.1984).

Here, WBS' claim raises a question of breach; therefore, the law of the place of performance shall govern. *See Equitable Trust Co. v. Bratwursthaus Manuf. Corp*., 514 F.2d 565, 567 (4th Cir. 1975) ("the law of the place of performance governs questions arising in connection with the performance of a contract"); *Best Med. Int'l v. Tata Elxsi Ltd*., No. 1:10-CV-01273 IDD, 2011 WL 5843627, at *4 (E.D. Va. Nov. 21, 2011) ("Breach of contract actions implicate performance issues.").  Courts in this jurisdiction have considered the place of performance to be the place where the majority of the services are to be performed.  *Best Med. Int'l*, 2011 WL 5843627, at *4 (citing *J. David Conti, Inc., v. Stokes Equip. Co*., No. 3:94cv15, 1994 U.S. Dist. LEXIS 16926, at *20 (E.D. Va. Sept. 16, 1994)).  Given the well-pleaded facts alleged in the Complaint, the payment processing services that were provided by WBS to the Defendants were performed from WBS' office in Fairfax County, Virginia.  (Compl. ¶¶ 1, 8, 10).  Thus, the undersigned will apply Virginia law to the breach of contract claim.

Under Virginia law, the elements of a breach of contract action are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Squire v. Va. Hous. Dev. Auth*., 758 S.E.2d 55, 60 (Va. 2014) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)).

*Breach of Contract as to Defendant Phoenix*

WBS argues that by engaging its services, Phoenix agreed to be responsible to pay for chargebacks and to maintain a merchant account that would cover any chargebacks.  (Compl. ¶ 55).  However, WBS has failed to identify any provision in the Merchant Processing Agreement that specifically requires Phoenix or Nguyen to pay for chargebacks, to maintain a merchant account, or to maintain a certain balance in a merchant account.  The undersigned has reviewed the Merchant Processing Agreement attached to the Complaint as Exhibit 1 and finds no term that could reasonably be interpreted in the manner alleged by WBS in the Complaint.  As a result, Phoenix was under no legally enforceable contractual obligation to create a merchant account, fund the merchant account, or repay chargebacks from a merchant account.  Indeed, the only mention of a "merchant account" in the Merchant Processing Agreement is in Section 9, which states that, "You further acknowledge and agree that you will not use your merchant account and/or the Services for illegal transactions."  (Compl., Exh. 1 § 9).  This contractual term is important, but in no way imposes a duty upon Phoenix or Nguyen to pay for chargebacks or establish and maintain a merchant account to be drawn upon to pay for chargebacks.

WBS argues in its Supplemental Memorandum to its Motion for Default Judgment that the agreement between the parties regarding chargebacks was "provided in the Contract through its incorporation of the Program Guide and Confirmation Page as referenced in the first sentence of its 'Signature(s)' section."  (Supplemental Mem. Supp. at 2).  The first sentence of the Signature Section of the Merchant Processing Agreement provides:

> Client certifies that all information set forth in this completed Merchant Processing Application is true and correct and that Client has received a copy of the Program Guide and Confirmation Page, which is part of this Merchant Processing Application (consisting of Sections 1-9), and by this reference incorporated herein.

(Compl., Exh. 1 § 9).  Importantly, however, this new fact was not alleged in the Complaint, and

18

neither the "Program Guide" nor the "Confirmation Page" referenced in WBS' memorandum, or in the Merchant Processing Agreement, was attached to the Complaint as an exhibit.  Thus, to the extent the Motion for Default Judgment and accompanying memorandum allege new facts, the Court will not consider those facts.  The fact that the Program Guide is incorporated into the Merchant Processing Agreement is clear on the face of the contract, but the precise obligations imposed by the Program Guide are nowhere to be found in the Merchant Processing Agreement, which is the only contract attached as an exhibit and therefore the only contract before the Court. Similarly, the Program Guide is never referenced in the Complaint.  As a result, any new claims as to the source of Phoenix's contractual duties would constitute a new fact not alleged in the Complaint.  *See Selig v. Niagara Recovery Sols. Mgmt. Grp., LLC*, No. 3:19-CV-769, 2020 WL 4283926, at *1 n.3 (E.D. Va. July 27, 2020) ("The motion for default judgment contains new facts not alleged in the complaint. On default judgment, however, '[t]he court must . . . determine whether the well-pleaded allegations in [the plaintiff's] *complaint* support the relief sought in this action.'  Thus, to the extent that the motion for default judgment alleges new facts, the Court will not consider those allegations.") (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)).  Therefore, upon review of the Merchant Processing Agreement and the well-pleaded factual allegations of the Complaint, the undersigned finds that WBS has failed to establish that Phoenix owed a legal obligation under the Merchant Processing Agreement to pay for chargebacks or to maintain a merchant account that would cover any chargebacks.

Next, WBS argues that "[m]aintaining a merchant account with sufficient funds to cover any chargebacks is also provided in Section 9 of the Merchant Processing Agreement, which states that '[c]lient authorize Processor and Bank and their affiliates to debit Clients designated bank account via Automated Clearing House (ACH) for costs associated with equipment hardware,

software, and shipping.'" (Comp., Exh. 1 § 9; Supplemental Mem. Supp. at 2).  WBS asserts that "[t]his provision implies that the costs for the use of software and hardware . . . can be deducted from the Client's designated bank account, which, thus, necessitates a merchant account to cover chargebacks."  (Supplemental Mem. Supp. at 2).  The undersigned disagrees and finds WBS' argument entirely inconsistent with the plain language of the contract.  This provision simply authorizes the processor, bank, and their affiliates to debit a client's designated bank account for costs associated with payment processing equipment and software.  This provision in no way supports the allegations made by WBS in its breach of contract claim.

Lastly, WBS argues that Section 9 of the Merchant Processing Agreement requires that the client agree that their continuing approval and use of processing services are premised on "continuing fraud prevention and account review processes," and that Phoenix agreed that it would not use its merchant account and WBS' services for illegal transactions.  (*Id*. at 12-13; Compl., Exh. 1 § 9).  Section 9 states, in relevant part, that:

> You further acknowledge and agree that you will not use your merchant account and/or the Services for illegal transactions, for example, those prohibited by the Unlawful Internet Gambling Enforcement Act . . .

(Compl. Exh. 1 § 9).  For the reasons stated below, the undersigned recommends the Court find that WBS has failed to establish by a preponderance of the evidence that the chargebacks, suspicious as they may be, are inherently "illegal transactions."  Even if they are illegal transactions, there is nothing about this term of the contract that would require Phoenix to refund the chargebacks as opposed to simply serving as a basis for WBS to terminate the contract.

Accordingly, the undersigned recommends the Court find that WBS failed to properly plead facts sufficient to establish that Phoenix breached any obligation under the Merchant Processing Agreement.

*Breach of Contract as to Defendant Nguyen*

Nguyen is the sole owner of Phoenix and signed the Merchant Processing Agreement, as the owner, on behalf of Phoenix.  In addition to signing the Merchant Processing Agreement as the client's business officer, Nguyen also signed a personal guarantee.  The Personal Guarantee provision states that:

> In exchange for Processor, Bank, (a member of Visa USA, Inc. and Mastercard International, Inc.), and TeleCheck Services, Inc. (the Guaranteed Parties) acceptance of, as applicable, the Agreement, and/or the Equipment Agreement and/or the TeleCheck/TRS Solutions Agreement, the undersigned unconditionally and irrevocably *guarantees the full payment and performance of Client's obligations under the foregoing agreements* (emphasis added), as applicable, as they now exist or as modified from time to time, whether before or after termination or expiration of such agreements and whether or not the undersigned has received notice of any amendment of such agreements.

(Compl., Exh. 1 § 9).  Based on the foregoing, in exchange for WBS' services, Nguyen agreed to personally guarantee the "full payment and performance of Client's obligations" and agreed "to indemnify the Guaranteed Parties for any and all amounts due from Client (Phoenix) under the foregoing agreements."  However, the Complaint alleges the contractual duty owed by the Defendants to WBS flows from the Merchant Processing Agreement.  Therefore, Nguyen's personal guarantee is limited to obligations owed by Phoenix under the Merchant Processing Agreement.  As discussed above, WBS has failed to establish that Phoenix owed a contractual duty to repay chargebacks or establish a merchant account to be used to repay chargebacks, and therefore Nguyen's personal guarantee is not triggered.  In reaching this result, the undersigned is required to consider only the Complaint as drafted and the exhibits filed with the Court.

Accordingly, the undersigned recommends the Court find that Nguyen's personal guarantee to pay the obligations of Phoenix that arose under the Merchant Processing Agreement was not operative because WBS failed to properly plead facts sufficient to establish that Phoenix owed any contractual obligation to pay the chargebacks.

**B.      *Unjust Enrichment Against All Defendants (Count II)***

In its Complaint, WBS alleges the Defendants,[10] by engaging with WBS to provide payment processing services, have been unjustly enriched at the expense of WBS in the amount of $99,296.00.  (Compl. ¶¶ 62, 69).  Unjust enrichment is a quasi-contract theory that requires a plaintiff to prove (1) that it conferred a benefit to the defendant; (2) that the defendant knew of the benefit and reasonably should have been expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value. *Schmidt v. Household Fin. Corp., II*, 661 S.E.2d 834, 838 (Va. 2008).  The undersigned recommends the Court find that WBS has satisfied each element of unjust enrichment as to Phoenix and Nguyen but not as to Pham.

Based on the chargeback process as pled in the Complaint, it is clear that Phoenix and Nguyen retained the funds that were the subject of the chargebacks.  WBS repaid the cardholders' banks, so the end result is that Phoenix and Nguyen reaped a windfall at the expense of WBS.  Thus, WBS conferred a benefit upon Phoenix and Nguyen, and given the nature of the contractual relationship, Phoenix and Nguyen clearly knew of this benefit and that they were ultimately financially responsible for the chargebacks.  Finally, Phoenix and Nguyen accepted the benefit and, even after repeated demands for payment, refused to reimburse WBS.  It is reasonable for the Court to infer that Nguyen, as the sole owner of Phoenix, was personally and unjustly enriched when Phoenix retained the value of the credit card transactions while WBS repaid the banks the cost of the chargebacks.  Pham, on the other hand, is identified only as someone who oversaw "operations and management" of Phoenix.  There is insufficient evidence in the record to conclude

---

[10]      Because the Complaint generally asserts an unjust enrichment claim as to "all Defendants," the undersigned will interpret the unjust enrichment claim as to Defendants Phoenix, Nguyen, and Pham as an alternative theory to its breach of contract claim.

that Pham was personally and unjustly enriched as a result of the chargebacks at issue.

Under Virginia law, it is well settled that a plaintiff cannot recover under a theory of unjust enrichment where the parties have an express contract that covers the matter at issue. *CMA CGM S.A. v. Dubitec Am., Inc.*, No. 2:14CV608, 2015 WL 5837571, at *5 (E.D. Va. Oct. 2, 2015) (citing *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 961 F.2d 489, 491 (4th Cir. 1992) (citation omitted) (stating that "[o]ne cannot obtain quantum meruit relief from another if he has expressly delineated the contractual obligations the two will have on the subject in question.")). However, despite WBS' earlier arguments, there is no evidence in the record that the parties entered into a contract that addresses the specific conduct which serves as the basis of Phoenix's and Nguyen's unjust enrichment.[11]

Accordingly, the undersigned recommends the Court find Phoenix and Nguyen were unjustly enriched at the expense of WBS in the amount of $99,296.00.

### C.    *Fraud Against All Defendants (Count III)*

WBS alleges multiple claims of fraud against all Defendants.  Each of these claims fail. On this record, the undersigned cannot find by a preponderance of the evidence that the chargebacks at issue, while clearly suspicious, are inherently fraudulent.  WBS' claims of fraud are not predicated on facts or reasonable inferences drawn from facts but based on conclusory statements that the Defendants executed a criminal scheme with fraudulent intent.  The undersigned previously recommended the Court not find WBS' conclusory allegations regarding

---

[11]    WBS also argued that the Defendants' agent agreed, outside the contract, to hold himself and the Defendants personally liable for chargebacks.  (*Id*. ¶¶ 44, 63).  However, the undersigned finds that the record does not sufficiently establish who made that representation, what authority that person had to act on behalf of Phoenix and/or Nguyen, or why this establishes a legally enforceable obligation.

the Defendants' commission of a scheme to defraud were sufficiently plead.  This includes, for example, WBS' claim that Phoenix provided fraudulent documentation reflecting the purchase of its used furniture.  This transaction was one of the four subject chargebacks.  WBS never alleges the basis for its conclusion that the documents were fraudulent even though WBS originally accepted the documentation as legitimate and approved the transaction.  Similarly, WBS relies on the fact that Phoenix did not maintain sufficient funds in its merchant account to demonstrate Defendants' fraudulent intent.  The evidence does not support such an inference.  As noted earlier, WBS failed to properly plead a contractual obligation on the part of Phoenix to establish and maintain a merchant account.  Even assuming such a duty existed, it does not necessarily follow that a lack of funds in the account is evidence of fraud.  A lack of operating funds may reasonably reflect the business is winding down and, for example, selling its furniture, or that it has simply suffered a financial setback.

Once WBS' general allegations are stripped away, the record contains few facts that suggest fraud.  Even though not explicitly argued by WBS, the undersigned takes note that Phoenix and Nguyen did profit by retaining the money from the credit card transactions even though the banks reimbursed the credit card holder.  Although irregular, this fact—even when considered in light of the other evidence—does not take this matter from a civil dispute to a criminal offense.  The Defendants' retention of the proceeds serves as the basis of their unjust enrichment but does not necessarily establish the chargebacks were inherently fraudulent.  In addition, the undersigned has considered the unusual size of the chargebacks given the nature of Phoenix's business as well as the series of attempted chargebacks that were not honored.  Unfortunately, WBS failed to allege or explain how or why these facts are more consistent with a scheme to defraud as opposed to Phoenix's normal business operations or even the closing of the business and the sale of its assets.

WBS provided Phoenix with payment processing services from May 16, 2022 to June 6, 2023, yet WBS chose to present no evidence regarding the pattern of transactions over that 13 month period that would permit the Court to reasonably infer that the subject chargebacks were demonstrably different and therefore likely fraudulent.

Accordingly, the undersigned recommends the Court find that WBS failed to sufficiently allege facts that would support any of its allegations of fraud.  The undersigned, nevertheless, will address WBS' fraud claims individually.

*Fraud Pursuant to 18 U.S.C. §§ 1341, 1343, 1344*

WBS alleges that the Defendants' actions constitute mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343, and bank fraud under 18 U.S.C. § 1344. (Compl. ¶¶ 84, 85, 86).  However, neither 18 U.S.C. § 1341 (relating to mail fraud), 18 U.S.C. § 1343 (relating to wire fraud), nor 18 U.S.C. § 1344 (relating to bank fraud), which are all federal criminal statutes, provide for a private cause of action.  *See, e.g., Tribble v. Reedy*, 888 F.2d 1387 (4th Cir. 1989) ("Like § 1341, § 1343 is a bare criminal statute which gives no express indication of Congressional intent to create a civil remedy" and "[u]nless there is clear Congressional intent to provide a civil remedy, a plaintiff cannot recover civil damages for an alleged violation of a criminal statute"); *Deane v. M&T Bank*, No. 2:23CV1 (EWH), 2023 WL 6211776, at *3 (E.D. Va. July 14, 2023) (noting that the criminal statutes, 18 U.S.C. §§ 1341, 1344, do not provide for private causes of action); *Farley v. Bank of Am., N.A.*, No. 3:14cv568, 2015 U.S. Dist. LEXIS 75972, at *17 (E.D. Va. June 11, 2015) (explaining that there is no private cause of action under 18 U.S.C. § 1341); *Johnson v. Bank of Am. Corp.*, No. 4:22-2975, 2022 U.S. Dist. LEXIS 240681, at *4 (D.S.C. Sept. 14, 2022) (noting that there is no private cause of action under 18 U.S.C. § 1343 and 18 U.S.C. § 1344).  Therefore, the undersigned recommends the Court deny WBS' Motion for Default

Judgment as to each Defendant for fraud under 18 U.S.C. §§ 1341, 1343, and 1344.

*Fraud Pursuant to Va. Code Ann. §§ 18.2-178, 18.2-152.7:2*[12]

Similarly, WBS also vaguely alleges that the Defendants actions constitute fraud by false pretenses under Va. Code Ann. § 18.2-178,[13] and further alleges that because the Defendants' acts involved electronically transmitted communications containing false representations to induce WBS to spend money, such false representations also constitute fraud through the use of a computer to commit a scheme under Va. Code Ann. § 18.2-152.7:2.[14]   (Compl. ¶¶ 87, 88).

As to section 18.2-178 of the Virginia Code, the plain language of the statute limits its application to criminal law and does not create a private cause of action, and WBS fails to cite any authority to the contrary.   However, as to Va. Code Ann. § 18.2-152.7:2, the Virginia Computer Crimes Act provides for civil relief to "[a]ny person whose property or person is injured by reason of a violation of any provision of this article or by any act of computer trespass set forth in subdivisions A 1 through A 8 of § 18.2-152.4 regardless of whether such act is committed with malicious intent may sue therefor and recover for any damages sustained and the costs of suit.

---

[12]     In addition to false pretenses, it appears WBS is alleging that Defendants have violated the Virginia Computer Crimes Act, Va. Code Ann. § 18.2-152.12.  (Supplemental Mem. Supp. at 6).

[13]     § 18.2-178. "Obtaining money or signature, etc., by false pretense," states "[i]f any person obtain, by any false pretense or token, from any person, with intent to defraud, money, a gift certificate or other property that may be the subject of larceny, he shall be deemed guilty of larceny thereof; or if he obtain, by any false pretense or token, with such intent, the signature of any person to a writing, the false making whereof would be forgery, he shall be guilty of a Class 4 felony."

[14]     § 18.2-152.7:2 "Using computer to commit a scheme involving false representations; penalty" states, "[a]ny person who, without the intent to receive any direct or indirect benefit, maliciously sends an electronically transmitted communication containing a false representation intended to cause another person to spend money, and such false representation causes such person to spend money, is guilty of a Class 1 misdemeanor."

Without limiting the generality of the term, 'damages' shall include loss of profits."  Va. Code Ann. § 18.2-152.12.  Thus, this statue creates a civil cause of action for any person whose property or person is injured by reasons of another's violation of any of the criminal statutes codified in Title 18.2, Chapter 5, Article 7.1.  A claim under this statute must comply with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard in that it must be pled with particularity. *Browne v. Waldo*, No. 3:22-CV-648-HEH, 2023 WL 2974483, at *9 (E.D. Va. Apr. 17, 2023) (citing *Marquette Equip. Fin., LCC v. Rowe Fine Furniture, Inc*., No. 1:07cv676, 2007 WL 9805734, at *2 (E.D. Va. Sept. 18, 2007)).

Based on the Complaint, WBS appears to be claiming that the Defendants violated Va. Code Ann. § 18.2-152.7:2 and that this violation entitles WBS to recover damages under § 18.2-152.12.  Section 18.2-152.7:2 states:

> Any person who, without the intent to receive any direct or indirect benefit, maliciously sends an electronically transmitted communication containing a false representation intended to cause another person to spend money, and such false representation causes such person to spend money, is guilty of a Class 1 misdemeanor.

However, as stated above, WBS fails to sufficiently allege facts establishing false representations made by Nguyen or any agent of Phoenix.  In addition, WBS fails to sufficiently plead its computer fraud claim with particularity.  Instead, WBS broadly alleges that because "such acts involved electronically transmitted communications containing a false representation intended to cause WBS to spend money, and such false representation caused WBS to spend money, such acts also constitute fraud through the use of a computer to commit a scheme, under Va. Code Ann. 18.2-152.7:2."  (Compl. ¶ 88).  Moreover, WBS' Supplemental Memorandum does little to clarify its position on how the Defendants' actions amount to computer fraud or how such acts involve electronically transmitted communications.  WBS' bare and conclusory allegation is insufficient to meet the pleading requirement as there are no facts before the undersigned to reasonably find

27

the Defendants violated section 18.2-152.7:2 of the Virginia Code.

Therefore, the undersigned recommends the Court deny WBS' Motion for Default Judgment as to Defendants for fraud under sections 18.2-178 and 18.2-152.7:2 of the Virginia Code.

*Common Law Fraud*

Finally, WBS alleges that the Defendants' actions constitute fraud under Virginia common law. "Virginia law recognizes the separate tort of fraud, even where the parties have agreed to a contract." *City of Richmond v. Madison Management Group, Inc.*, 918 F.2d 438, 446-47 (4th Cir. 1990). "However, the source-of-duty rule prescribes that in actions alleging both a tort claim and a breach of contract claim, for the tort claim to survive, 'the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'" *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (1998) (citing *Foreign Mission Bd. v. Wade*, 409 S.E.2d 144, 148 (Va. 1991)). Since the undersigned has determined that WBS failed to allege a breach of contract, the undersigned will analyze the merits of WBS' civil common law fraud claim.

In Virginia, to prevail on a common law fraud claim, WBS must demonstrate by clear and convincing evidence: (1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) in reliance by the party misled, and (6) resulting in damage to the party misled." *State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E. 2d 316, 321 (Va. 2005); *Feeley v. Total Realty Management*, 660 F. Supp. 2d 700, 712 (E.D. Va. 2009); *Winzeler v. Sanchez*, No. 2:13CV612, 2015 WL 12645001, at *8 (E.D. Va. July 28, 2015).[15]

---

[15]   WBS' Complaint fails to specify whether WBS seeks to advance a claim for actual fraud or constructive fraud.  Given WBS' argument as to fraud in its Supplemental Memorandum, the undersigned will interpret WBS' allegation as a claim for actual fraud.

First, as set forth herein, WBS failed to establish by clear and convincing evidence any of the elements of common law fraud.  WBS utterly failed to establish a record that demonstrates any Defendant knowingly and intentionally made a false representation about a material fact with the intent to mislead.  When the facts are distilled from the poorly supported allegations, they reveal only a civil dispute in which Phoenix and Nguyen were unjustly enriched.

Second, with respect to a common law fraud claim, WBS failed to plead its claim with sufficient particularity under Fed. R. Civ. P. 9(b).  WBS is required to plead facts in support of its fraud claim with specificity, including the "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Feeley v. Total Realty Mgmt*, 660 F. Supp. 2d 700, 712 (E.D. Va. Aug. 28, 2009) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir.1999)); *see also Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 579 (E.D. Va. 2006) ("Grouping defendants together in a pleading fails to satisfy the requirement that the who, what, when, where, why, and how, be pled with specificity."); *Juntti v. Prudential-Bache Sec., Inc.*, 993 F.2d 228 (4th Cir. 1993) (unpublished) ("Further indicative of the insufficiently particular character of the complaint is its impermissible aggregation of defendants without specifically alleging which defendant was responsible for which act.").  Mere allegations of "fraud by hindsight" will not satisfy the requirements.  *Harrison*, 176 F.3d at 784 (quoting *Hillson Partners Ltd. P'ship v. Adage, Inc.*, 42 F.3d 204, 209 (4th Cir. 1994)).

Here, WBS claims that "Defendants made false representations to WBS that certain transactions occurred, through providing WBS with fabricated transaction statements, to continue using WBS's services and obtain WBS's money through chargebacks."  (Comp. ¶ 74).  While WBS has broadly asserted that "Defendants" made "false representations," based on other facts

alleged in the Complaint, the undersigned will assume this allegation principally refers to Nguyen's and Pham's alleged misrepresentation that they sold Phoenix's used furniture and processed the payment through Phoenix's credit card terminal—which resulted in three of the subject chargebacks in the amounts of $19,805.00, $19,984.00, and $19,802.00. (*Id*. ¶¶ 29-31).[16] However, the Complaint fails to satisfy Fed. R. Civ. P. 9(b)'s heightened pleading standard.  Rule 9(b) provides that the plaintiff must plead fraud with particularity.  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783–84 (4th Cir.1999).  To meet the more stringent pleading standard for fraud, a plaintiff must set forth "the time, place, and content of the false representations, as well as the identity of the person making the misrepresentations and what he obtained thereby." *Id*. at 784 (internal quotation marks and citations omitted).  WBS' Complaint merely alleges that Nguyen and Pham, or the Defendants generally, lied about the transactions and provided false documentation.  WBS provides no detail or explanation about how the false representations were provided to WBS, what documents were provided, why the documents were false, how the documents were determined to be false, nor does WBS set forth any specific date(s) upon which the false representations were made.  *Feeley*, 660 F.Supp.2d at 712 ("Rule 9(b) requires; that allegations of fraud be pled with specificity [and][g]rouping defendants together in a pleading fails to satisfy the requirement that the who, what, when, why and how, be pled with specificity.") (quotation marks and citation omitted).  Simply put, WBS' broad and generalized allegations of fraud fail to meet the heightened pleading standard for fraud claims.  *See MSSI Acquisition, LLC v. Azmat Consulting, Inc*., No. 1:11-CV-01312 LMB, 2012 WL 3309359, at *8 (E.D. Va. July 19, 2012), *report and recommendation adopted*, No. 1:11CV1312 LMB/IDD, 2012

---

[16]    Although WBS alleges that Nguyen's and Pham's statements were untrue and intended to deceive, the undersigned previously recommended that the Court find there is insufficient evidence to establish these representations were objectively false.

WL 3309377 (E.D. Va. Aug. 13, 2012) ("Plaintiff's Complaint merely alleges that "Defendants"

or "Azmat and Azmat Consulting" did certain things, rather than specifically setting forth who did

what.  Furthermore, Plaintiff provides no detail or explanation about how the contents of the

allegedly false statements were false.").

Finally, the "fraud must relate to a present or a pre-existing fact and cannot ordinarily be

predicated on unfulfilled promises or statements as to future events."  *Mortarino v. Consultant*

*Eng'g Servs., Inc.*, 467 S.E.2d 778, 781 (Va. 1996) (internal citations omitted).  "[I]f a defendant

makes a promise that, when made, he has no intention of performing, that promise is considered a

misrepresentation of present fact and may form the basis for a claim of actual fraud."  *Station #2,*

*LLC v. Lynch*, 695 S.E.2d 537, 540 (Va. 2010) (quoting *SuperValu, Inc. v. Johnson*, 666 S.E.2d

335, 342 (Va. 2008)).  However, if the alleged "false representation" is a mere failure to perform

on a promise, it is only sufficient to support an actual fraud claim if the promisor had no intention

of performing at the time the promise was made.  *Id.* at 541 n. 5.  "The plaintiff bears the burden

of proving these elements by clear and convincing evidence."  *Owens v. DRS Auto. Fantomworks,*

*Inc.*, 764 S.E.2d 256, 260 (Va. 2014).

To support its common law fraud claim, WBS must demonstrate that from the inception

Phoenix was established for a fraudulent purpose and with a fraudulent intent.  Yet, WBS cites no

evidence in support of this proposition and, in fact, the record suggests otherwise.  WBS performed

Phoenix's payment processing services for approximately 12 months before the alleged fraud was

recognized.  Thus, even under WBS' version of events, the only indication of the Defendants' lack

of intent to perform on the promise is almost one year after they entered into the contract.  The

record does not support a finding that any agent of Phoenix or Nguyen did not intend to fulfill its

obligations at the time the contract was entered. *See Bhutta v. DRM Constr. Corp.*, No. 3:22CV288

(RCY), 2023 WL 3006591, at *4 (E.D. Va. Apr. 19, 2023) (citing *Station #2, LLC*, 695 S.E. 2d. at 540).

Therefore, the undersigned recommends the Court deny WBS' Motion for Default Judgment as to all Defendants for common law fraud.

### D.       *Conspiracy Against All Defendants (Count IV)*

In addition to the breach of contract and fraud claims, WBS also claims the Defendants "conspired, combined, associated, agreed, and mutually undertook to engage in the wrongful conduct described in this pleading, including wrongfully causing the chargebacks against WBS," which WBS asserts amounts to common law conspiracy and statutory conspiracy under 18 U.S.C. § 1349.  (Compl. ¶¶ 91, 92).  WBS further claims that the actions of the Defendants were "for the purpose of willfully and maliciously injuring WBS in its trade, business, or profession," which entitle WBS to relief under Va. Code Ann. § 18.2-500, including "three-fold for the damages sustained" and attorneys' fees.  (Compl. ¶¶ 94, 95).  Each conspiracy claim fails.

*Conspiracy Pursuant to 18 U.S.C. § 1349*

18 U.S.C. § 1349 provides that "[a]ny person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."  For the same reasons the undersigned found that WBS' federal criminal statutory claims involving fraud would necessarily fail, the undersigned also finds that WBS' claim against the Defendants for conspiracy under 18 U.S.C. § 1349 also fails because this criminal statute does not provide for a private cause of action. *See Deane v. M&T Bank*, No. 2:23CV1 (EWH), 2023 WL 6211776, at *3 (E.D. Va. July 14, 2023) ("To the extent that Plaintiff intends to assert separate claims against Defendant for the alleged violation of 18 U.S.C. § [] 1349 . . . the Court finds that such claims would necessarily fail.  These

statutes are criminal statutes that do not provide for private causes of action."); *Smith v. Spears*, No. CV 2:17-3384-PMD-BM, 2018 WL 4523201, at *4 (D.S.C. Feb. 8, 2018), *report and recommendation adopted*, No. 2:17-CV-3384-PMD-BM, 2018 WL 2772668 (D.S.C. June 11, 2018) (noting that 18 U.S.C. § 1349 does not provide for a private cause of action).  Therefore, the undersigned recommends the Court deny Plaintiff's Motion for Default Judgment as to the Defendants for conspiracy under 18 U.S.C. § 1349.

*Conspiracy Pursuant to Va. Code Ann. § 18.2-500*

Under Virginia Code § 18.2-500, "[a]ny person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499"—Virginia's conspiracy statute—may seek relief in a civil court and "recover three-fold the damages sustained, and the costs of the suit, including a reasonable fee to plaintiff's counsel." Va. Code Ann. § 18.2-500.  In turn, the relevant portion of Virginia Code § 18.2-499 imposes liability on "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of . . . willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever . . . ."  Va. Code Ann. § 18.2-499.

To state a claim for statutory conspiracy under Virginia law, a plaintiff must allege (1) a combination of two or more persons for the purpose of willfully and maliciously injuring the plaintiff in his business; and (2) resulting damage to the plaintiff.  *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 618 (E.D. Va. 2009) (citing Va. Code Ann. §§ 18.2–499–500); *See also Allen Realty Corp. v. Holbert*, 227 Va. 441, 318 S.E.2d 592, 596 (1984) (internal citations omitted).  An act is "willful and malicious" if "undertaken to injure the plaintiff intentionally, purposefully, and without legal justification."  *Simmons v. Miller*, 261 Va. 561, 544 S.E.2d 666, 667 (2001)).  Moreover, a plaintiff must support its business conspiracy claim with more than

conclusory allegations. *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 618 (E.D. Va. 2009) (citing *Mansfield v. Anesthesia Assocs*., No. 1:07cv941, 2008 WL 1924029 at *4, 2008 U.S. Dist. LEXIS 34732 at *12 (E.D. Va. Apr. 28, 2008)).

With regard to statutory conspiracy, the plaintiff is not required to prove actual malice. *Advanced Marine Enters., Inc. v. PRC Inc*., 256 Va. 106, 501 S.E.2d 148, 154 (1998). Sections 18.2-499 and -500 do not require a plaintiff to prove that a conspirator's primary and overriding purpose is to injure another in his trade or business. *Id*. (citing *Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc*., 249 Va. 39, 453 S.E.2d 261, 267 (1995)). Rather, these statutes merely require proof of legal malice, that is, proof that the defendant acted intentionally, purposefully, and without lawful justification. *Advanced Marine*, 501 S.E.2d at 154-55. Since statutory conspiracy requires that the defendant acted with the purpose of injuring the plaintiff in its business, evidence of the Defendant's motive is relevant. *Galaxy Computer Servs., Inc. v. Baker*, 325 B.R. 544, 555 (E.D. Va. 2005).

Here, the undersigned recommends the Court find that WBS has failed to sufficiently plead a claim of statutory conspiracy as to the Defendants. WBS alleges the Defendants—without identifying which Defendants—conspired, among other things, "to engage in the wrongful conduct described in this pleading, including wrongfully causing the chargebacks against WBS." (Compl. ¶ 91). WBS further alleges that the "Defendants wrongfully obtained the aforementioned $99,296 from WBS by means of a conspiracy." (Supplemental Mem. Supp. at 6). Without identifying a specific underlying tort, the undersigned will construe this claim as a claim for conspiracy to commit fraud. The undersigned has previously recommended the Court find that WBS failed to establish actual fraud and for the same reasons WBS has also failed to allege a conspiracy to commit fraud. WBS' allegations in Count IV of the Complaint are general legal conclusions and

do not provide a factual basis to find a mutual undertaking or agreement as required by the statute. *See Airlines Reporting Corp. v. Mundo Travel Corp.*, No. 1:10CV1119, 2012 WL 13018971, at *6 (E.D. Va. May 8, 2012), *report and recommendation adopted*, No. 1:10-CV-1119-LO-TCB, 2012 WL 13019696 (E.D. Va. May 24, 2012) (finding that Plaintiff has only asserted legal conclusions as to its allegation of conspiracy and has not provided a factual basis for which to prove a mutual understanding or agreement). Moreover, WBS has again failed to satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b). *See Harrell v. Colonial Holdings, Inc.*, 923 F. Supp. 2d 813, 825 (E.D. Va. 2013) (citing *Gov't Emples. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D.Va. 2004) ("business conspiracy, like fraud, must be pleaded with particularity)); *Terry v. SunTrust Banks, Inc.*, 493 Fed. App'x 345, 358 (4th Cir. 2012) (requiring conspiracy claim that alleges fraud to satisfy Rule 9).

*Common Law Conspiracy*

Finally, WBS alleges that "such acts" also amount to common law conspiracy. (Compl. ¶ 92). For a common law civil conspiracy claim under Virginia law, a plaintiff must show "(i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff." *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007) (citing *Glass v. Glass*, 228 Va. 39, 47 (1984)). Further, under Virginia law, "a common law claim of civil conspiracy generally requires proof that the underlying tort was committed." *Id*. (quoting *Almy v. Grisham*, 639 S.E.2d 182, 189 (2007)). This is based on the premise that the "gist" of the civil action "is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means." *Id*. (quoting *Almy*, 639 S.E.2d at 190).

For the same reasons identified above, the undersigned recommends a finding that WBS has not alleged sufficient facts to plead common law conspiracy. The undersigned recommended the Court find that WBS has failed to sufficiently plead a cause of action for fraud. Thus, WBS has not established the requisite underlying tort to sufficiently plead a claim of common law conspiracy to commit fraud. Moreover, the allegations set forth in Count IV of the Complaint are legal conclusions and do not provide a factual basis for a mutual undertaking or combination between "Defendants" as required by Virginia law.

**Recommended Relief**

Unlike liability, allegations concerning damages are not admitted upon default. *See* Fed. R. Civ. P. 8(b)(6); *Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Instead, the court "must make an independent determination regarding damages." *Wilcox v. Transmodal Solutions, LLC*, 473 F. Supp. 3d 574, 584 (E.D. Va. 2020) (citation and quotation marks omitted).

*Compensatory Damages*

The undersigned having recommended default judgment be granted to WBS on the grounds that Phoenix and Nguyen were unjustly enriched as alleged in Count II of the Complaint recommend the Court award WBS $99,296.00 in compensatory damages. This award reflects the amount from the subject chargebacks retained by Phoenix and Nguyen as well as the amount paid by WBS to the cardholders' banks. This compensates WBS for the actual loss it sustained.

*Pre-Judgment and Post-Judgment Interest*

The undersigned further recommends the Court award pre-judgment interest at an annual rate of 6% from May 4, 2023, the date WBS completed its payments totaling $99,296.00 to the cardholders' banks, to the date of the Court's judgment. "Virginia law governs the award of pre-

judgment interest in a diversity case." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999). Under Virginia law, a district court may award pre-judgment interest, in its discretion, by weighing the "equities in a particular case to determine whether an award of pre-judgment interest is appropriate." *See* Va. Code Ann. § 8.01-382; *Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 727 (4th Cir. 2000). The rationale behind awarding pre-judgment interest "is to ensure that an injured party is fully compensated for its loss." *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 196 (1995). District courts have discretion with regard to the interest rate and the date at which interest begins to accrue. *World Fuel Servs. Trading, DMCC v. M/V HEBEI SHIJIAZHUANG*, 12 F. Supp. 3d 810, 813 (E.D. Va. 2014) (citations omitted).

Given that WBS has been denied the access to these funds, Phoenix and Nguyen have benefited from the use of these funds, and Phoenix and Nguyen have made no effort to repay WBS, the undersigned finds the equities weigh in favor of pre-judgment interest. As to the amount of pre-judgment interest, Virginia law provides that, "if the judgment is based on a contract that does not fix an interest rate, the court shall apply the judgment rate of interest of six percent to calculate any award of pre-judgment interest, pursuant to § 8.01-382. *Allied Prop. & Cas. Ins. Co. v. Zenith Aviation Inc.*, 2019 U.S. Dist. LEXIS 234302, at *23-24 (citing Va. Code § 6.2-302(B)). Here, WBS' recovery is based on a quasi-contract theory, so it seems reasonable to apply to the standard six percent figure to this case as well.

In addition to pre-judgment interest, WBS requests "[a]ll other and further relief that this Court deems necessary and/or just." (Compl., Prayer for Relief). While WBS did not specifically request post-judgment interest in its Complaint or Motion for Default Judgment, the undersigned recommends awarding post-judgment interest in accordance with 28 U.S.C. § 1961. *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district

court."); *ExxonMobil Oil Corp. v. Black Stone Petroleum Inc.*, 221 F. Supp. 3d 755, 769 (E.D. Va. 2016), *judgment entered*, No. 1:16-CV-148, 2016 WL 6657395 (E.D. Va. Nov. 9, 2016) (holding that post-judgment interest on a damages award is mandatory under federal law). Here, the undersigned finds that entitling WBS to post-judgment interest is appropriate in this case to ensure that WBS receives the proper value of the damages awarded against Defendants, regardless as to when WBS may be able to collect such damages.

*Treble Damages, Punitive Damages, and Attorney's Fees*

WBS also seeks treble damages, punitive damages, and attorneys' fees and costs pursuant to *Prospect Dev. Co. v. Bershader*, 258 Va. 75 (1999) and Va. Code. Ann. § 18.2-500. (Compl., Prayer for Relief). According to the Complaint, WBS is also seeking punitive damages for "Defendants' intentional deceitful conduct" under Va. Code. Ann. § 8.01-38.1 but provides no further explanation or legal analysis as to why WBS is entitled to punitive damages under the Virginia Code. According to the Supplemental Memorandum, it appears that WBS is requesting punitive damages, treble damages, and attorney's fees in connection with its fraud and/or conspiracy claims, which the undersigned has recommended denying. Therefore, the undersigned recommends WBS' request for punitive damages, treble damages, and attorneys' fees based on WBS' claims of fraud and/or conspiracy also be denied.

## Recommendation

For the reasons outlined above, the undersigned United States Magistrate Judge recommends that WBS' Motion for Default Judgment be GRANTED-IN-PART and DENIED-IN-PART as to the Defendants. Specifically, the undersigned recommends that:

- WBS' Motion for Default Judgment be DENIED as to Count I of the Complaint alleging Breach of Contract as to Defendant Phoenix and Defendant Nguyen;

- WBS' Motion for Default Judgment be GRANTED as to Count II of the Complaint alleging Unjust Enrichment as to Defendant Phoenix and Defendant Nguyen;

- Defendant Phoenix and Defendant Nguyen shall be jointly and severally liable for the amount of $99,260.00, including pre-judgment interest at six percent interest from May 4, 2023 through the date of this judgment, and post-judgment interest in accordance with 28 U.S.C. § 1961;

- WBS' Motion for Default Judgment be DENIED as to Count II of the Complaint alleging Unjust Enrichment as to Defendant Pham;

- WBS' Motion for Default Judgment be DENIED as to Count III of the Complaint alleging Fraud as to all Defendants;

- WBS' Motion for Default Judgment be DENIED as to Count IV of the Complaint alleging Conspiracy as to all Defendants;

- WBS' other requested relief, including treble damages, punitive damages, and attorneys' fees and costs be DENIED; and

WBS be given seven (7) days to show cause why the Complaint should not be dismissed as to Defendant Khalifa pursuant to Fed. R. Civ. P. 4(m) for failing to effect service of process within 90 days after the Complaint was filed.

### Notice

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to file timely objections waives appellate review of any judgment or decision based on this Report and Recommendation.

*William E. Fitzpatrick*
WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

March 7, 2024
Alexandria, Virginia